UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 15-CR-1299-2-GPC |
| Plaintiff, | **ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE** |
| v. | |
| ALFONSO MARTINEZ, | |
| Defendant. | **[ECF No. 285]** |

On March 3, 2021, Defendant Alfonso Martinez filed a *pro se* motion seeking compassionate release or reduction of his sentence under 18 U.S.C. 3582(c)(1)(A)(i). ECF No. 285. On June 11, 2021, the Government filed a response in opposition to Mr. Martinez's motion. ECF No. 294. On July 27, 2021, the Court ordered the Government to file Mr. Martinez's medical records under seal on or before July 30, 2021. ECF No. 298. On August 27, 2021, the Court ordered the Government to file under seal additional medical records. ECF No. 302. The Government responded to that request on September 2, 2021. ECF No. 303. For the reasons set forth below, Mr. Martinez's motion for compassionate release is **GRANTED**.

1

## I.    BACKGROUND

Mr. Martinez was convicted by guilty plea of one count of Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846. ECF No. 226 at 1. Mr. Martinez was sentenced to a term of imprisonment of 104 months, followed by three years of supervised release. *Id.* at 3. Mr. Martinez was arrested on May 19, 2015, and was in continuous custody between his arrest, and the time of sentencing. ECF No. 159, Presentence Report ("PSR"), at 1. Mr. Martinez has served 79 months, or 76% of full sentence. *Id.* at 1. Mr. Martinez's projected release date with good time credits is October 5, 2022, which means he has served about 89% of his sentence with good time credits included. ECF No. 285, Motion, at 2. He is currently incarcerated at FCI Victorville Medium FCI and is scheduled to be released on October 5, 2022. Motion at 1; Opp. at 2.[1]

Mr. Martinez is 54 years old. PSR at 3. At the time of the PSR, he was reported as not having a history of serious physical health issues. PSR ¶ 52. However, he maintains that he suffers from hypertension, obesity, and major depressive disorder. Motion at 2. He believes he contracted COVID-19 in August 2020 when inmates from a different housing unit at C.I. Reeves were moved into his housing unit. *Id.* at 5. He was not tested at the time, but states that he continues to suffer side effects of long COVID, "such as shortness of breath, exhaustion, general fatigue, roughness in the chest, and piercing pain in the lung. *Id.* at 6. However, in the medical records produced by the Government, there is a notation that he tested positive for the virus in August 2020. Mr. Martinez submitted a request for compassionate release to the Facility Administrator at C.I. Reeves on

---

[1] The Court notes that when Mr. Martinez filed his motion he was incarcerated at C.I. Reeves I & II in Pecos, Texas. Motion at 5. He was transferred to Victorville Medium I FCI on April 14, 2021. ECF No.

January 1, 2021. *Id.* at 15. His request was denied. *Id.* at 16-17. At the time Mr. Martinez filed his motion, 30 days had lapsed. Motion at 1.

It is still not clear whether Mr. Martinez has received the COVID-19 vaccine. The medical records the Government produced did not indicate whether Mr. Martinez had received the vaccine, nor did they provide any records in response to the Court's August 27, 2021 Order to indicate that Mr. Martinez has now been vaccinated. In their opposition, the Government discusses at length the BOP's efforts to vaccinate federal inmates and mitigate the spread of COVID-19, but does not anywhere specifically address whether Mr. Martinez had been offered or received the vaccine. *See* Opp. at 2-6.

Mr. Martinez now moves this Court for compassionate release because his health conditions place him at an increased risk of becoming severely ill due to his underlying medical concerns, because he is suffering from long-term side effects of his previous COVID infection, and because the prison conditions and environment are not conducive to mitigating the spread of a highly contagious virus.

## II.     DISCUSSION

Mr. Martinez now moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>      (i) extraordinary and compelling reasons warrant such a reduction; or

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. Accordingly, there are two questions before the Court: first, whether Defendant has satisfied the administrative exhaustion requirement, and second, whether Defendant has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id.* As one district court explained:

> The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A). *See, e.g.*, First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

### a. Exhaustion Requirement

Section 3582(c)(1)(A) imposes an exhaustion requirement requiring a defendant to fully exhaust all administrative rights to appeal before a defendant may move the court for release. Under this requirement, courts may consider a motion for compassionate release so long as the defendant has either fully exhausted all administrative remedies or 30 days have elapsed from the receipt of such a request by the warden, whichever is earlier.

On January 1, 2021, Martinez sent a written request for compassionate release to the Facility Administrator at C.I. Reeves. Motion at 15. The Government conceded that Martinez "met the statutory exhaustion requirement because he filed this motion 'after lapse of 30 days' from the date of his request to the warden." Opp. at 8, n. 7 (citing 18 U.S.C. § 358(c)(1)(A).

Because more than thirty days have passed since Mr. Martinez's request to the C.I. Reeves Facility Administrator, the Court finds Mr. Martinez has satisfied the statute's exhaustion requirement.

### b. Extraordinary and Compelling Circumstances

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Prior to the First Step Act, the Sentencing Commission's applicable policy statement was found in Section 1B1.13 of the Sentencing Guidelines. U.S.S.G. § 1B1.13. Section 1B1.13 explains that a sentence reduction under 18 U.S.C.

3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

> (1) (A) Extraordinary and compelling reasons warrant the reduction;
> . . .
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons."

However, the Sentencing Commission has not issued a new policy statement since the passage of the First Step Act, and Section 1B1.13 only refers to motions filed by the Bureau of Prisons Director. As a result, the Ninth Circuit has held that Section 1B1.13 is not an "applicable policy statement[]" for motions under 18 U.S.C. § 3582(c)(1)(A) filed by a defendant. *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). Since there is now no applicable policy statement governing compassionate release motions filed by defendants, district courts are empowered to consider any extraordinary and compelling reason for release that defendants may raise, even if not enumerated by the Sentencing Commission's statements. *Id.* at 801. The Court therefore may consider Section 1B1.13 in its broad exercise of discretion, but it is not bound by its definition of extraordinary and compelling reasons. *Id.*

Martinez argues extraordinary and compelling circumstances exist which justify a sentence reduction because his underlying health conditions place him at increased risk for severe illness if he were to contract COVID-19 again, and he continues to suffer from long-term effects of his earlier COVID infection. Motion at 6. Further, he argues that the

global pandemic has increased the severity of his sentence, due to the modifications in prison life.

### 1. *Prison Conditions Under COVID-19*

As an initial matter, the Court finds that custodial conditions during the current COVID-19 pandemic, taken alone, are not sufficient to justify reducing a defendant's sentence. While the Court is sympathetic to the heightened stressors and hardships of incarceration during the pandemic and diminished access to rehabilitative programming, the changed conditions adopted by the Bureau of Prisons ("BOP") in response to the pandemic are unlikely to constitute extraordinary and compelling reasons for compassionate relief when not taken in combination with other individual circumstances, because such conditions apply to most, if not all, federal inmates in BOP custody.

At the same time, the court is *not* reassured by the lengthy description of the BOP's efforts to mitigate the spread of COVID-19 in federal prisons, which occupies a large portion of their opposition to Mr. Martinez's motion. *See* Opp. at 2-6. As of this writing, the Victorville complex is reporting eight confirmed active cases. Federal Bureau of Prisons, "COVID-19 Coronavirus," https://bop.gov/coronavirus/index.jsp. Further, Victorville is currently operating under "Intense Modifications" (the highest level) which is based on the facilities' COVID-19 medical isolation rate, combined percentage of staff and inmate completed vaccinations series, and their respective county transmission rates. *Id.* Victorville has struggled with its pandemic response, and courts (and the Government) have acknowledged the troubling conditions at Victorville throughout the pandemic. *See, e.g. United States v. Brown,* 2020 WL 6747194 (D. Md. Sept. 25, 2020) (granting motion for compassionate release to 52-year-old obese inmate who had served 75% of sentence due to bad conditions at Victorville). Therefore, Mr. Martinez is living under the most rigorous possible BOP modifications to daily prison life. And because the Government's briefing does little more than recycle facts about the

BOP's response to COVID *generally*, rather than Mr. Martinez in particular, the Court observes these harsh conditions with concern.

### 2. *Mr. Martinez's Health Conditions*

Mr. Martinez argues that because he suffers from hypertension, obesity, and major depressive order, he is at risk for severe illness if he contracts COVID.  Motion at 8.  He also argues that he suffers from long-term effects of an earlier COVID infection.  In its opposition, the Government counters that "from a review of the Defendant's BOP health records, Defendant [does not] appear to be suffering from these maladies."  Opp. at 1 n.1, 6, n.6.

Martinez has been under the control and care of BOP since May 2015.  The medical records that the Government produced, in support of this contention that Mr. Martinez does *not* suffer from underlying health conditions that might place him at an increased risk of severe illness were he to contract COVID, include only records from April 2021.  When the Court ordered the Government to produce further records (including those from 2020), the Government responded that there were no further records from the intervening six years of Mr. Martinez's incarceration when he was in Taft Correctional Institution or Reeves Detention Center.  ECF No. 303.  The Government filed a declaration from BOP Counsel Theresa T. Talpacido confirming that there were no further medical records could be located for Martinez, from either facility that were available for the Government to produce with its opposition.  ECF No. 303-1, Declaration of Theresa T. Talpacido.  Because the Government has failed to produce records which support its assertions that Mr. Martinez does not suffer from underlying health conditions, the Court will accept Mr. Martinez's assertions about his own health as true.

Hypertension, obesity, and serious mental health conditions are all underlying health conditions that can make an individual more likely to get severely ill from

COVID-19.  *People Who Are at Higher Risk for Severe Illness: People with Certain Medical Conditions*, Centers for Disease Control and Prevention ("CDC"), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (December 15, 2021).  At the time of the PSR, Mr. Martinez had a BMI of 32.3, which qualifies him as obese.  PSR at 3.  As stated above, the Court is not prepared to second guess Mr. Martinez's representation that he has hypertension, a heart condition that could make one more likely to develop severe illness from COVID-19, because the medical records the Government produced contain very limited information about Mr. Martinez's medical history.

Finally, while the PSR did not indicate he suffered from any other physical health issues, it indicated that Mr. Martinez suffers from serious depression and that he attempted suicide while in custody.  PSR ¶ 54. While Defendant's major depressive disorder is not sufficient to justify § 3582(c) relief on its own, courts have found mental health conditions to contribute to extraordinary and compelling reasons warranting compassionate release. *See, e.g., United States v. Rodriguez*, 2020 WL 4592833, at *1 (S.D. Cal. Aug. 5, 2020) (finding the mental health consequences of continued incarceration in the midst of the pandemic place further stress on the immune system); *United States v. Lavy*, 2020 WL 3218110, at *5 (D. Kan. June 15, 2020) (finding associations between major depressive disorder and "atypical immune responses"); *United States v. Johnson*, 464 F. Supp. 3d 22, 37 (D.D.C. 2020) (finding extraordinary and compelling the movant's PTSD combined with his physical illness)

The Court finds that the combination of Mr. Martinez's health conditions, the longer-term side effects from his COVID-19 infection, and the present continuing concerns about the spread of COVID-19 and conditions within BOP facilities, constitutes extraordinary and compelling circumstances when the Court also considers the fact that Mr. Martinez has served 89% of his custodial sentence.  *See, e.g.,* U*nited States v.*

*Sawicz*, No. 08-287, 453 F.Supp.3d 601 (E.D.N.Y. Apr. 10, 2020) (granting compassionate release of defendant with hypertension who was housed at a facility where COVID-19 cases were reported, with only five more months to serve before being eligible for home confinement).

### c. Public Safety and Sentencing Factors

The factors outlined in section 3553 and 3582 also require consideration of public safety, the seriousness of the offense, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. §§ 3553(a)(2)(C), 3582(c)(1)(A)(ii).

The Government makes only one argument about the 3553(a) factors. It states that "Defendant's repeated involvement in drug trafficking presents a true risk that he will continue his past conduct if released," Opp. at 1, and therefore Mr. Martinez poses a present danger to the community.

The Court does not agree for four reasons. First, according the pre-sentence report, Mr. Martinez does not have any such lengthy criminal history. In fact, there are no adult criminal convictions noted in the PSR. *See* PSR ¶¶ 37-43. It is therefore not clear what evidence the Government has for the assertion that Mr. Martinez is a habitual offender of the conduct for which he was charged and is serving his sentence. Second, accounting for good time credit, Mr. Martinez has now served 89% of his custodial sentence. Third, Mr. Martinez has already been incarcerated for more than six years, and his 104-month custodial sentence will conclude on October 5, 2022, without any action from this Court. The Government does not explain why there is a greater danger of Mr. Martinez violating the law and the conditions of his supervised release less than ten months from now, than if he were to be released now. Fourth, Mr. Martinez is a lawful permanent resident, but he is likely to be removed to Mexico upon his release. Finally, Mr. Martinez does not have a lengthy criminal history, he does not have substance abuse issues, and he has a large, supportive family in Mexico where he planned to live and work for his family's

small business which is run by his niece. PSR ¶ 51. Accordingly, the Court finds that the § 3553(a) factors weigh in favor of releasing Mr. Martinez from custody.

## CONCLUSION

For the foregoing reasons, Mr. Martinez's Motion for Compassionate Release is **GRANTED**, to be effective at the close of business today. Mr. Martinez's sentence is **MODIFIED** and **REDUCED** to time served pursuant to 18 U.S.C. § 3852(c), effective immediately, to be followed by a 36-month term of supervised release under conditions set forth in the original judgment.

The Government shall serve copies of this Order on the Warden of FCI Victorville Medium I. They shall immediately release Defendant Alfonso Martinez from custody.

**IT IS SO ORDERED.**

Dated: January 13, 2022

Hon. Gonzalo P. Curiel
United States District Judge